J-A18044-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN THE INTEREST OF: N.B.R.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: N.B.R.H., A MINOR | No. 274 WDA 2017 |

Appeal from the Order January 27, 2017
In the Court of Common Pleas of Westmoreland County
Juvenile Division at No(s): DP 12 of 2012

BEFORE: BOWES, J., LAZARUS, J., AND OTT, J.

DISSENTING MEMORANDUM BY BOWES, J.: FILED OCTOBER 10, 2017

I respectfully dissent. I disagree with the learned majority's conclusion that Westmoreland County Children's Bureau ("WCCB") stipulated to the resumption of the juvenile court's jurisdiction pursuant to 42 Pa.C.S § 6351(j). In my view, the trial court accepted the agency's testimony that Appellant provided it with sufficient documentation of (1) his enrollment in college, and (2) his employment of at least eighty hours per month, two of the five criteria for an individual over eighteen years old in Appellant's situation to meet the statutory definition of "child" pursuant to § 6302. Contrary to my esteemed colleagues' perspective, I believe that the certified record sustains the trial court's finding that Appellant established both of these factual predicates. Thus, rather than remand for further proceedings that are unwarranted, I

would address the merits of Appellant's appeal and, for the reasons explained infra, I conclude that the certified record does not support the court's ultimate decision to refuse to resume jurisdiction. Accordingly, I would reverse the order denying Appellant's petition to resume jurisdiction pursuant to § 6351(j).

The majority accurately sets forth the factual history and procedural posture of this case and outlines our deferential standard of review of a dependency court's factual determinations. Hence, I do not discuss those matters herein. I add only that, prior to the juvenile court's previous order on December 14, 2016, that discharged Appellant from WCCB's custody and terminated juvenile court supervision, the child welfare agency in Alabama agreed to assume supervision of Appellant pursuant to the Interstate Compact on the Placement of Children ("ICPC"). However, WCCB withdrew the ICPC request when it was discovered that Appellant had not enrolled at the University of Alabama-Birmingham ("UAB") as anticipated. N.T., 1/27/17, at 8-9, 16-17. Moreover, Tara Lorenzo, the WCCB caseworker who testified during the evidentiary hearing on Appellant's current petition for the resumption of jurisdiction, stated that the agency would submit a new ICPC request for Alabama to assume supervision if the juvenile court resumed its jurisdiction. Id. at 9. At that point, the agency can ask that Alabama extend medical coverage to Appellant and provide services commensurate with those available in Pennsylvania.

In order to prevail in his motion to resume jurisdiction pursuant to §
6351(j), Appellant was required to prove, inter alia, that he continued to meet
the definition of "child pursuant to section 6302[.]" 42 Pa.C.S. § 6351(j). As
it relates to this case, the relevant definition of "child" is as follows:

An individual who:

. . . .

(3) is under the age of 21 years and was adjudicated dependent
before reaching the age of 18 years, who has requested the court
to retain jurisdiction and who remains under the jurisdiction of the
court as a dependent child because the court has determined that
the child is:

(i) completing secondary education or an equivalent
credential;

(ii) enrolled in an institution which provides postsecondary
or vocational education;

(iii) participating in a program actively designed to promote
or remove barriers to employment;

(iv) employed for at least 80 hours per month; or

(v) incapable of doing any of the activities described in
subparagraph (i), (ii), (iii) or (iv) due to a medical or behavioral
health condition, which is supported by regularly updated
information in the permanency plan of the child.

42 Pa.C.S. § 6302.

Instantly, Appellant asserted in his petition that he satisfied the portion
of the statutory definition relating to postsecondary education and
employment. During the ensuing evidentiary hearing, Ms. Lorenzo testified
that Appellant presented evidence to WCCB's satisfaction concerning his

employment and enrolment in postsecondary education at Jefferson State Community College. N.T., 1/27/17, at 6, 10. Specifically, she testified that Appellant submitted copies of pay stubs and a class schedule for Jefferson State. Id. at 10, 14. While Ms. Lorenzo acknowledged that she did not obtain a release to contact the institution directly to confirm Appellant's enrollment, she was satisfied with the documentation that he provided. Id. at 14, 23-24.

In response to the juvenile court's inquiry as to whether the course schedule established that he was enrolled, she stated, "Yes. We had received [information] back in November that he was enrolled. We had his acceptance. He had sent all of that to me upon receipt of that and then [with] the schedule – it satisfied [Angela] Lanky [the Supervisor for Independent Living.]" Id. at 24. Thereafter, Ms. Lorenzo confirmed the trial court's statement that, based upon the documents that Appellant submitted, "the agency is satisfied that [Appellant] meets the requirements to be employed at least 80 hours per month, and the agency is also satisfied that he's enrolled in an institution that provides post-secondary education[.]" Id.

Appellant also testified during the evidentiary hearing. He estimated that he worked eighty hours per month as a server at a restaurant. Id. at 33. However, in explaining his difficulty confirming the number of hours he works due to the fluctuating nature of restaurant shifts, WCCB stipulated through counsel that, regardless of whether Appellant established the employment threshold, he would qualify as a child under § 6302 because he also satisfied

- 4 -

the education requirement. Id. Counsel explained, "It's one or the other. So if the Court would find [either] of those, it would make him qualified[.] [W]e are not necessarily stating he has to have 80 hours because we realize that he's also going to school." Id. at 33.

In view of the foregoing evidence adduced during the hearing, Appellant established, at a minimum, that he is enrolled in postsecondary education, and/or most likely employed eighty hours per month, which under the facts of this case qualifies him as a child as the term is defined in § 6302 of the Juvenile Act. Thus, I cannot join the majority in concluding that WCCB impermissibly stipulated to the juvenile court's resumption of jurisdiction. Indeed, contrary to my colleagues' perspective, I do not believe that WCCB entered into any stipulations regarding jurisdiction. In reality, the agency was satisfied by Appellant's documentation under the circumstances of the case.

The majority's emphasis on the parties' random references to stipulations during the evidentiary hearing is unwarranted. First, as noted supra, the agency stipulated that, pursuant to the statute, Appellant had to establish only one of the five enumerated criteria. See N.T., 1/27/17, at 33. That certainly is not a stipulation to jurisdiction. Likewise, the trial court's on-the-record reference to a WCCB "stipulation" related to the agency's factual concession that Appellant satisfied the threshold burden of documenting his status as a child, i.e., the court observed that WCCB "stipulated" that Appellant produced documentation to satisfy two prongs of the definition. The

reference does not describe a stipulation to jurisdiction, but to facts. Most important, the case law that the majority cites in support of its rationale regarding the agency's supposedly improper action is ill fitting insofar as neither of those cases concerns a party's purported stipulation to facts. Unlike WCCB's factual concessions in the case at bar, the stipulations in Mead Johnson & Co. v. Breggar, 189 A.2d 866 (Pa. 1963) (parties could not agree to issuance of injunction absent adjudication that plaintiff's product was in fair and open competition); and Foley Brothers, Inc. v. Commonwealth, 163 A.2d 80 (Pa. 1960) (parties may not stipulate to more than legal number of arbitrators), were designed to circumvent the procedural framework of the respective proceedings. That is not the case herein. If any type of agreement can be patched together in this case, it would be the stipulation that WCCB was satisfied by Appellant's documentation, an assertion that the record sustains.

To be clear, unlike the procedural concessions the parties agreed to in Mead Johnson, supra and Foley Brothers, supra, no party in this case, much less WCCB, stipulated to the jurisdictional requirements and, critically, the trial court did not purport to accept any supposed stipulation to its jurisdiction. Even a cursory review of the certified record will belie the notion of an improper stipulation to jurisdiction. In reality, WCCB accepted Appellant's documentation of his academic and employment status and the

trial court accepted the agency's explanation why it believed the documents were satisfactory.

The crux of the majority's complaint seems to be that WCCB did not independently confirm Appellant's documentation to the majority's satisfaction. It is also disturbed that the trial court accepted the veracity of the agency's evidence while simultaneously doubting Appellant's credibility. In light of the statutory framework and our standard of review, I believe those concerns are unfounded.

WCCB was the designated authority to supervise Appellant's placement. That agency was responsible for making the threshold decision regarding Appellant's status as a student and/or an employee. Appellant provided the agency documentation of his status, which it accepted. The agency highlighted the deficiencies in the documentation in its testimony before the juvenile court, which, as the ultimate arbiter of fact, was entitled to accept all, some, or none of the evidence. The juvenile court accepted the agency's evidence and determined that Appellant satisfied the statutory definition of child. At no point did the trial court indicate that it was constrained by WCCB's decision to accept the evidence as true. Indeed, if the trial court was truly "skeptical that [Appellant] met the definition of 'Child'" as the majority concludes, then it would have rejected the agency's assessment outright. Majority memorandum at 16. However, the juvenile court not only accepted the evidence but concluded that Appellant "certainly meets the technical

requirements" of the statute. N.T., 1/27/17, at 42. Notwithstanding the majority's misgivings about the underlying documentation, the certified record sustains the trial court's determination.

Accordingly, unlike the majority, I would not remand the matter for the juvenile court to make a second factual determination of Appellant's eligibility under § 3602. Instead, I would confront the merits of the case and reverse the order denying Appellant's motion for the resumption of jurisdiction.

Instantly, having determined that Appellant was eligible for the resumption of jurisdiction, the juvenile court denied relief based upon its determination that, absent WCCB's direct supervision of Appellant, which could not be attained while he resides in Alabama, resuming jurisdiction would be contrary to the young man's best interests. Specifically, the court reasoned:

> Based upon the record and facts . . . , the WCCB would be unable to provide medical coverage or ensure that the Child has medical coverage or other services, or otherwise provide even moderately effective supervision if the child resides some 750 miles away in Alabama. The WCCB has no assurance that Alabama's children and youth services authorities are either willing or able to provide effective supervision of the Child. This is especially the case given the Child's manifest lack of consistent commitment to his education in Alabama and to his responsibilities relative to the agency charged with his custody and, further, given his lack of credibility and forthrightness under direct and cross-examination.

> All this suggests that resumption of jurisdiction in this matter, which would enable the Child to live in Alabama without effective supervision, is not best suited to the protection and physical, mental and moral welfare of this child. If the Child wishes to receive a monthly stipend [of $750] he needs to be willing to

act in accordance with his election to remain in the WCCB's charge and to submit to real supervision. Giving this Child a "blank check" is not in his best interest.

Trial Court Opinion, 2/28/17, 4-5.

Appellant and the Juvenile Law Center, which filed a brief as amicus curie in support of Appellant's position, argue that, once the juvenile court determined that Appellant was a child as defined in § 6302, it lacked discretion under § 6351(j) to decline to resume jurisdiction under a best interests analysis. The foundation of this position is that resumption of jurisdiction is mandatory once the statutory definition of child is triggered and the child's best interests matters only in the dispositional phase, i.e., determining how WCCB should provide for the child.

As discussed infra, I reject the contention that the juvenile court erred in weighing Appellant's physical, mental, and moral welfare in its decision whether to resume jurisdiction. Indeed, while § 6351(j) does not explicitly provide for the trial court's exercise of discretion in extending jurisdiction, Pa.R.J.C.P. 1635(C) and (D), which govern the evidentiary hearings and orders concerning the resumption of jurisdiction, recognize the reality that the dependent child's best interests are always paramount. Rule 1635 provides in pertinent part as follows:

> C. Hearing. At the hearing, the court shall state its findings and conclusions of law on the record in open court as to whether:
>
> . . .

> (4) it will exercise jurisdiction pursuant to 42 Pa.C.S. § 6351(j) because it is best suited to the protection and physical, mental, and moral welfare of the child[.]

D. Orders.

> (1) After a hearing, the court shall enter an order granting or denying the motion to resume juvenile court jurisdiction.
>
> (2) If the court resumes jurisdiction, the court shall order:
>
> (a) that resumption of jurisdiction is best suited to the protection and physical, mental, and moral welfare of the child.

Pa.R.J.C.P. 1635 (C) and (D) (emphases added).

Thus, the rules governing the juvenile court's decision whether to resume jurisdiction undoubtedly require the trial court to engage in a best interests determination in considering whether to resume jurisdiction. Hence, I do not believe the trial court erred in exercising its discretion under § 6351(j).

Nevertheless, I do not believe the certified record sustains the court's ultimate decision to deny the petition to resume jurisdiction. Stated plainly, the juvenile court's uneasiness about the agency's ability to perform ongoing supervision of Appellant in Alabama is unfounded, and its quid pro quo proposal to Appellant that "There is no stipend without supervision. . . . [Y]ou have a choice, you either move back to Pennsylvania or you forego the benefits of Resumption of Jurisdiction" is inappropriate when there is no indication that Alabama would withhold services N.T., 1/27/17, at 43. Despite the juvenile court's belief that the Alabama child service agency would decline

to assume supervision over Appellant if the juvenile court resumed jurisdiction, the certified record confirms that the concern is groundless.

While the distance between Pennsylvania and Alabama would prevent WCCB from providing Appellant services directly, that distance does not affect Appellant's ability to utilize services in Alabama. Recall that Ms. Lorenzo testified that Alabama previously agreed to assume supervision of Appellant pursuant to an ICPC request, but WCCB subsequently withdrew the request upon discovering that Appellant had been discharged from UAB. Id. at 8-9, 16-17. Moreover, Ms. Lorenzo anticipated that the agency would submit a new ICPC request to Alabama if the juvenile court resumed jurisdiction, and at that point, it would request Alabama extend its medical coverage to Appellant. Id. at 21. Despite the trial court's apprehensions, there is nothing in the certified record to indicate that Alabama would reject the ICPC request or refuse to provide Appellant services equivalent to those available in Pennsylvania. In the event that Alabama rejects the ICPC and refuses to provide Appellant services and medical coverage, the juvenile court can thereafter address that situation, and if required, renew the Pennsylvania-or-nothing ultimatum to Appellant when those circumstances warrant it.

Accordingly, I do not believe that the certified record will sustain the juvenile court's trepidation about resuming jurisdiction while Appellant remains in Alabama, and on this ground, I would reverse the order denying Appellant's motion to resume jurisdiction.